UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHETRAM AJNOHA, an infant by his father,
SHIVNAUTH DHANRAJ, and SHIVNAUTH
DHANRAJ, individually,

    Plaintiffs,

    v.

CHAVARRIA DEMETRIO-MEJIA and
ENTERPRISE LEASING COMPANY OF
DETROIT,

    Defendants.
-------------------------------------------------------------X
-------------------------------------------------------------X
ENTERPRISE LEASING COMPANY OF
DETROIT,

    Third-Party Plaintiff,

    v.

ELMA POPE,

    Third-Party Defendant.
-------------------------------------------------------------X

MEMORANDUM
AND ORDER
03-CIV-2464 (SMG)

Gold, S., United States Magistrate Judge

## Introduction

    This action arises out of an automobile accident which took place on November 25, 2001 (the "accident"). Plaintiff Shivnauth S. Dhanraj was driving with his minor son, plaintiff Chetram Ajnoha, at the time of the accident. Compl. ¶ 8. Defendant Enterprise Leasing Company of Detroit and Third-Party Defendant Elma Pope now move for summary judgment on the grounds that plaintiffs have each failed to present evidence of a "serious injury" as required by Section 5104(a) and defined in 5102(d) of New York's Insurance Law, commonly referred to

as the "No-Fault" Law. See Licari v.Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570 (1982). This matter has been assigned to me for all purposes pursuant to 28 U.S.C. § 636(c) with the consent of the parties. See Docket Entry 8.

## Discussion

A.   Standards Governing Summary Judgment

In reaching a summary judgment determination, a Court must assess whether there are any genuine issues of material fact to be tried. Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162,167 (2d Cir. 1991). A factual dispute is material if it "might affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The Court resolves any ambiguities and draws all reasonable inferences in favor of the nonmoving party. See Coach Leatherware, 933 F.2d at 167. However, "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment," who must instead "set forth specific facts ... showing a genuine issue exists for trial." Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

B.   "Permanent Consequential" or "Significant" Limitation of Use

Under New York's No-Fault Law, a serious injury is defined to include a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system." N.Y. Ins. Law § 5102(d). Plaintiffs claim that they suffered spinal injuries which meet these prongs of the statutory definition as a result of the accident. See Affirmation in Opposition of Stuart Sears, Esq., ¶¶ 16, 18.

A plaintiff may establish a serious injury with "an expert's designation of a numeric

percentage of a plaintiff's loss of range of motion." Toure v. Avis Rent-a-Car Systems, Inc., 98 N.Y.2d 345, 350, 746 N.Y.S.2d 865, 868 (2002). "An expert's *qualitative* assessment ... also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body ... function or system." Id. (emphasis in original). As the Court of Appeals went on to explain,

> [w]hen supported by objective evidence, an expert's qualitative assessment of the seriousness of a plaintiff's injuries can be tested during cross-examination, challenged by another expert and weighed by the trier of fact. By contrast, an expert's opinion unsupported by an objective basis may be wholly speculative, thereby frustrating the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries or frivolous claims.

Id., 98 N.Y.2d at 351, 746 N.Y.S.2d at 868. See also Pommels v. Perez, 2005 WL 975859 (Apr. 28, 2005) (doctor's opinion that plaintiff suffered severe and permanent injuries, supported by measurements of loss of range of motion and an MRI revealing herniated and bulging discs, held sufficient to defeat summary judgment); Clervoix v. Edwards, 10 A.D.3d 626, 781 N.Y.S.2d 690 (2d Dep't 2004) (treating chiropractor's affidavit specifying decreased range of motion, along with evidence of herniated and bulging discs confirmed by MRI, held sufficient to defeat summary judgment); cf. Licari, 57 N.Y.2d at 239 (holding that plaintiff who established that he suffered a painful sprain which limited the movement of his neck and back failed to establish a serious injury because he offered no evidence of the *extent* of the limitation of movement) (emphasis in original).

      Measured against the standards announced in these cases, the medical evidence submitted by plaintiffs is sufficient to raise questions of fact for trial. Plaintiffs have submitted the affidavits of Drs. Bentsianov and Khodadadi, as well as the medical records on which the doctors

3

relied, in opposition to defendants' motion. Dr. Bentsianov treated each plaintiff for several months beginning the day after the accident, and reevaluated each plaintiff's condition during a visit on August 10, 2004. In his affirmations, Dr. Khodadadi, a radiologist, summarizes the results of MRIs taken of each plaintiff by his office.

Plaintiff Ajnoha's MRI reveals a "moderate size bulging disc" compromising the thecal sac at L4-L5, as well as straightening and reversal of the lumbar spine "most likely due to muscular spasm." Khodadadi Aff., annexed to Sears Aff. as Ex B. Ajnoha was seen by Dr. Bentsianov at regular intervals for four months after the accident. Bentsianov Aff., annexed to Sears Aff. as Ex. A, ¶¶ 10-15. Ajnoha complained, among other things, of severe pain and restricted motion in his cervical and lumbar spines and both shoulders. Id. ¶ 6. Having reviewed Ajnoha's medical records, Dr. Bentsianov's diagnoses included a bulging disc compromising the thecal sac, straightening and reversal of the lordotic curve consistent with muscle spasm, and restricted range of motion of the lumbar and cervical spines. Id. ¶ 8. According to Dr. Bentsianov, Ajnoha continued to experience pain, stiffness, spasms, diminished range of motion in his neck and lower back, and difficulty bending and picking up objects, even after four months of treatment. Id. ¶¶ 14-15.

During his examination of Ajnoha last August, Dr. Bentsianov "administered a full 'range of motion' study" of the cervical and lumbar regions of Ajnoha's spine. Id. ¶ 21. Dr. Bentsianov found that Ajnoha continued to suffer from limited range of motion in his cervical and lumbar spine almost three years after the accident. Depending upon the type of motion examined, Dr. Bentsianov's findings are that Ajnoha has sustained a loss of range of motion of from 5 to 20 degrees in his cervical spine and from 5 to 15 degrees in his lumbar spine. Id. ¶ 21.

The findings with respect to plaintiff Dhanraj are similarly significant. Plaintiff Dhanraj's MRI reveals a "[m]oderate size central herniated disc" causing posterior displacement of the thecal sac at L5-S1, as well as straightening of the lumbar spine "most likely due to muscular spasm." Khodadadi Aff., annexed to Sears Aff. as Ex F. Like Ajnoha, Dhanraj was seen by Dr. Bentsianov at regular intervals for four months after the accident. Bentsianov Aff., annexed to Sears Aff. as Ex. E, ¶ 15. Dhanraj complained, among other things, of severe pain and restricted motion in his cervical and lumbar spines and both shoulders. Id. ¶ 6. Having reviewed Dhanraj's medical records, Dr. Bentsianov's diagnoses included herniated cervical discs at C3-4, C4-5 and C5-6 with cord impingement, a herniated disc at L5-S1 causing posterior displacement of the thecal sac, straightening of the lordotic curve consistent with muscle spasm, and restricted range of motion of the lumbar and cervical spines. Id. ¶ 8. According to Dr. Bentsianov, Ajnoha continued to experience pain, stiffness, spasms and diminished range of motion in his neck, lower back and shoulders, and had difficulty bending and picking up objects, even after four months of treatment. Id. ¶¶ 14-15.

During his examination of Dhanraj last August, Dr. Bentsianov "administered a full 'range of motion' study" of the cervical and lumbar regions of Dhanraj's spine. Id. ¶ 21. Dr. Bentsianov found that Dhanraj continued to suffer from limited range of motion in his cervical and lumbar spine almost three years after the accident. Dr. Bentsianov's findings are that Dhanraj has sustained a loss of range of motion, depending on the particular type of motion measured, from 10 to 40 degrees in his cervical spine and from 0 to 20 degrees in his lumbar spine. Id. ¶ 21. Dr. Bentsianov further concluded that Dhanraj's injuries were permanent. Id. ¶ 23.

Dr. Bentsianov's findings are similar to those held sufficient to raise a question of fact for trial in Toure. 98 N.Y.2d 345, 746 N.Y.S.2d 865. See also Thompkins v. Santos, No. 98 CV 463, 1999 WL 1043966, at * 6 (S.D.N.Y. Nov. 16, 1999) (holding findings comparable to those of Dr. Bentsianov sufficient to defeat summary judgment). Moreover, although Dr. Bentsianov does not explicitly describe plaintiff Ajnoha's injuries as permanent, his findings of continued limited range of motion three years after the accident are sufficient to support an inference of permanency. See Howard v. King, 307 A.D.2d 278, 762 N.Y.S.2d 423 (2d Dep't 2003). Finally, defendants' contention that some of the MRI findings recounted in Dr. Bentsianov's affidavits are not supported by sworn MRI reports is insufficient to defeat summary judgment. See Pommels, 2005 WL 975859 at n.5.

C. <u>Inability to Perform Usual Daily Activities for Ninety of One Hundred Eighty Days</u>

Plaintiffs contend in the alternative that they meet the serious injury threshold because each sustained a "medically determined injury or impairment of a non-permanent nature which prevent[ed him] from performing substantially all of the material acts which constitute[d his] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following" the accident. N.Y. Ins. Law § 5102(d). See Affirmation in Opposition of Stuart Sears, Esq., ¶¶ 16, 18. A plaintiff invoking this prong of the statute must also present objective evidence of injury or impairment. Toure, 98 N.Y.2d at 357, 746 N.Y.S.2d at 872. In addition, a plaintiff must, of course, present evidence of the substantial limitations described by the statute, demonstrating that he "has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." Licari, 57 N.Y.2d at 236.

As discussed above, plaintiffs have submitted objective evidence of injury in the form of

6

affidavits from their treating physician. While Dr. Bentsianov states in those affidavits that both plaintiffs had difficulty bending and picking up objects and performing daily and household activities after the accident, he does not describe in any detail the degree of difficulty plaintiffs experienced or the particular daily activities they had difficulty performing.

To provide more specific support for their claim that they were unable to perform their usual daily activities after the accident, plaintiffs have submitted two affidavits of plaintiff Dhanraj, one on his own behalf and one on behalf of his son, Chetram Ajnoha.

In the affidavit he submitted on his own behalf, Dhanraj states that he was unable to return to his job as a construction worker for seven months following his accident, and that for four months after the accident he could not clean, do laundry, or otherwise help out around the house. Dhanraj Aff., annexed to Sears Aff. as Ex. G, ¶¶ 13-14. During his deposition, Dhanraj explained that, although he tried to return to work within a few days of the accident, he found that he could not use power tools or handle roofing paper. Dhanraj Dep., annexed to Corrigan Aff. as Ex. H, 50-51. Dhanraj further testified that he could not lift cans of paint or heavy tools, and that he had problems bending. Dhanraj Dep. 75. As a result, his employer hired someone to replace him. Dhanraj Dep. 52. Dhanraj's testimony that he could not perform the construction work he was doing prior to the accident for seven months, and could not do household chores for four months, is sufficient to raise a question of fact about whether he was able to perform his usual daily activities for ninety of the one hundred eighty days following his accident.

In his affidavit on behalf of his son, Dhanraj states that Ajnoha was unable to return to school for two weeks, and missed school on an unspecified number of days sporadically thereafter. Dhanraj Aff., annexed to Sears Aff. as Ex. C, ¶ 14. Dhanraj further states in his

affidavit that Ajnoha was unable to play baseball, football, soccer and basketball for "many months." Id. ¶ 15. I note, however, that the accident took place in November, and it is therefore unlikely that Ajnoha would have spent much time playing outdoor sports during the months following his accident in any event.

During his deposition, Ajnoha confirmed that he missed about two weeks of school after the accident and about thirty or forty more days sporadically throughout the school year. Ajnoha Dep., annexed to Corrigan Aff. as Ex. G, 66-67. Ajnoha further testified that, after the accident, he missed gym class for the remainder of the school year, that he could not touch his toes, and that he had his father drive him to school because he could not carry his backpack. Ajnoha Dep. 27, 82.

Ajnoha has failed to present evidence that his injuries prevented him from participating in his usual daily activities for ninety of the one hundred eighty days following the accident. Ajnoha returned to school within two weeks of the accident. Although he missed school sporadically thereafter, he did not miss ninety days of school after the accident.

Moreover, participating in gym class, playing sports and carrying his backpack as he walked to school are the only specific activities Ajnoha states he could not perform as a result of the accident. It is not clear from Ajnoha's deposition testimony, however, why he did not participate in gym class. Although Ajnoha testified at one point that his activities were limited by continuing pain, he also described an ongoing testicular condition which has caused him to miss gym class in the past. Ajnoha Dep. 22-23, 30. In addition, Dhanraj testified that Ajnoha was directed not to participate in sports for at least two to three weeks after undergoing testicular surgery. Dhanraj Dep. 88-89. It is similarly unclear how often Ajnoha played sports before the

8

accident, which occurred just as winter was beginning. Ajnoha testified that he regularly played sports on Saturdays before the accident, but was never a member of a team or a player in an organized league. Ajnoha Dep. 79-81. Nor is it clear that Ajnoha stopped playing sports solely because of the accident. As noted above, Ajnoha had a condition which required testicular surgery, and this medical problem also interfered with physical activity. Moreover, Ajnoha acknowledged during his deposition that, before the accident, he played sports near his old home with his old friends, and that he has since moved to a new home where he attends a new school. Ajnoha Dep. 81. In any event, "limitations placed upon [a plaintiff] with respect to sports and physical education, even for an extended period, is not enough." Jones ex rel. Jones v. Norwich City School District, 283 A.D.2d 809, 812, 725 N.Y.S.2d 131 (3d Dep't 2001). See also, Ceruti v. Abernathy, 285 A.D.2d 386, 728 N.Y.S.2d 445 (1st Dep't 2001) (holding that evidence that plaintiff was absent from school for twenty days and refrained, on doctor's instructions, from participating in physical education class for three months was insufficient to defeat summary judgment).

With respect to Ajnoha's claim that he could not carry his backpack, Dhanraj explained during his deposition that he began driving his son Ajnoha to school because Ajnoha had difficulty walking to school while carrying his backpack. As Dhanraj further explained, however, Ajnoha's walk to school consisted of ten to twelve uphill blocks. Dhanraj Dep. 85. Difficulty carrying a backpack filled with school books for ten to twelve blocks, uphill, does not establish a serious injury. See Licari, 57 N.Y.2d at 238 (plaintiff who returned to work twenty-four days after his accident and was able to maintain most of his daily routine after returning to work failed to establish a "serious injury" under this provision); Ingram v. Doe, 296 A.D.2d 530,

9

745 N.Y.S.2d 215 (2d Dep't 2002) (plaintiff who returned to work within two months of accident and offered only conclusory allegations that her recreational and household activities were curtailed failed to establish that her impairment prevented her from performing substantially all of the material acts constituting her normal daily activities for ninety out of one hundred eighty days following her accident); <u>Murphy v. Arrington</u>, 295 A.D.2d 865, 744 N.Y.S.2d 255 (3d Dep't 2002) (plaintiff who missed six weeks of work, followed by another six weeks of light duty, failed to establish a serious injury); <u>Berk v. Lopez</u>, 278 A.D.2d 156, 718 N.Y.S.2d 332 (1st Dep't 2000) (plaintiff who missed five days of work, had difficulty sitting at a computer in one position for long periods of time, and would, several times per week, lie on her office floor or stand and press her back against the wall during meetings to relieve pain, failed to establish a serious injury).

## **Conclusion**

For the reasons stated above, defendants' motion for summary judgment is granted with respect to Ajnoha's claim that his injuries prevented him from performing substantially all of his usual and customary daily activities for not less than ninety days during the one hundred eighty days following the accident, and is in all other respects denied.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
June 3, 2005

U:\eoc 2004-2005\ajnoha sj.wpd